**U.S. BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**IN RE:**

**PORCHLIGHT LOUISVILLE, LLC** **Case No. 24-32057**

**DEBTOR**

* * * *

**STEPHEN BARNES** **PLAINTIFF**
**(In his capacity as**
**Chapter 7 Trustee)**

**v.** **Adv. No.: 26-_____**

**THE HUNTINGTON NATIONAL BANK** **DEFENDANTS**

**Serve:**

Huntington National Bank
c/o Robert J. Staubel, Vice President,
or any Officer
525 Vine Street, 14th Floor
Cincinnati, OH 45202

**Serve:**

Huntington National Bank
c/o Stephen D. Steinour
Chairman, President and Chief Executive Officer
or any Officer
17 S High St
Columbus, OH 43215

**SERVICEMASTER CLEAN/RESTORE SPE LLC**

**Serve:**

ServiceMaster Clean/Restore SPE LLC
c/o Cogency Global Inc., Registered Agent
828 Lane Allen RD., Suite 219
Lexington, KY, 40504

**Serve:**

ServiceMaster Clean/Restore SPE LLC
c/o Michael Mullican, CEO, or Any Officer
One Glenlake Parkway NE, Suite 1400
Atlanta, GA, 30328

**IDEA 247, INC. D/B/A IDEA FINANCIAL**

**Serve:**

Idea 247, Inc. d/b/a Idea Financial
c/o Justin Leto, CEO, or Any Officer
800 NW 62 Avenue, Suite 750
Miami, FL 33126-5055

**Serve:**

Idea 247, Inc. d/b/a Idea Financial
c/o United States Corporation Agents, Inc.
476 Riverside Ave.
Jacksonville, FL 32202

**LIBERTAS FUNDING LLC**

**Serve:**

Libertas Funding LLC
c/o Gary Katcher, Executive Chairman, or Any Officer
411 West Putnam St., Suite 220
Greenwich, CT 06830-6295

**Serve:**

Libertas Funding LLC
c/o Libertas Partners, GP, LLC, Registered Agent
411 West Putnam St., Suite 220
Greenwich, CT 06830-6261

**SAMSON MCA LLC**

**Serve:**

Samson MCA LLC
c/o Any Officer
17 State Street, 6th Floor
New York, NY 10004-1501

# COMPLAINT

* * * * * * *

Comes the Plaintiff, Trustee Stephen Barnes (the "Trustee" or the "Plaintiff"), solely in his limited capacity as the Trustee for the Chapter 7 Bankruptcy Estate of Porchlight Louisville, LLC ("Debtor"), by and through counsel, pursuant to FRBP § 7001(b) and/or 11 U.S.C. §§544, and for his complaint against Defendants The Huntington National Bank (hereinafter "Defendant Huntington"), ServiceMaster Clean/Restore SPE LLC (hereinafter "Defendant ServiceMaster"), Idea 247, Inc. d/b/a Idea Financial (hereinafter "Defendant Idea Financial"), Libertas Funding LLC (hereinafter "Defendant Libertas"), and Samson MCA LLC (hereinafter "Defendant Samson MCA") (collectively referred to hereinafter as "Defendants"), and states as follows:

## Introduction

This is the Chapter 7 Trustee's Adversary Proceeding complaint, pursuant to Federal Rule of Bankruptcy Procedure 7001(b) and 11 USC § 544(a), for a determination of the validity, priority, and extent of the Defendants' alleged liens or property interests against certain funds on deposit with the Chapter 7 Trustee.

## Parties, Jurisdiction, and Venue

1. On August 20, 2024 (the "Petition Date"), the Debtor filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On January 17, 2025 (the "Conversion Date"), the case was converted to Chapter 7.

3. Plaintiff, Stephen Barnes, is the duly appointed, qualified and serving Chapter 7 Trustee in this case.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1409.

5. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §1334.

6. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (B), (E), (K), (M), and/or (O).

7. Plaintiff confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure to the entry of a final order by the Court in connection with this Complaint.

8. This adversary proceeding is brought pursuant to Federal Rule of Bankruptcy Procedure 7001, Section 544 of Title 11 of the United States Code (the "Bankruptcy Code"), and Chapter 355 of the Kentucky Revised Statutes (the "Kentucky Uniform Commercial Code").

9. Defendant Huntington is a National Bank, which directly or indirectly transacted business with Debtor.

10. Defendant ServiceMaster is a Delaware limited liability company, which directly or indirectly transacted business with Debtor.

11. Upon information and belief, Defendant Idea Financial is a Florida Corporation, which directly or indirectly transacted business with Debtor.

12. Upon information and belief, Defendant Libertas is a Connecticut Limited Liability Company, which directly or indirectly transacted business with Debtor.

13. Upon information and belief, Defendant Samson MCA is a foreign Limited Liability Company, which directly or indirectly transacted business with Debtor.

## Procedural History

14. Defendant Idea Financial filed Proof of Claim 2 as secured.

15. Subsequent to filing its Proof of Claim, Defendant Idea Financial caused to be filed a termination statement for its UCC Financing statement.

16. Defendant Huntington filed Proofs of Claim 8-11 as secured.

17. Subsequent to filing its Proof of Claim, Huntington Bank caused to be filed a termination statement for one of its two UCC Financing statements.

18. Defendant ServiceMaster filed Proof of Claim 12 as unsecured.

19. Defendant ServiceMaster's Proof of Claim 12 does not include any statement asserting a lien or property interest in any assets of the Debtor or the Bankruptcy estate in its Proof of Claim.

20. During the Chapter 11 proceeding, the Court entered a series of interim cash collateral orders in the Jointly Administered "lead" case of Porchlight Holdings, LLC. (WDKY Bkr. 24-32056) (Lead Case Docs. 13, 51, 89) (the "Cash Collateral Orders").

21. The Cash Collateral Orders authorized the Debtor to use cash collateral, granted replacement liens to Defendant Huntington and three inferior creditors[1] which encumbered assets acquired or generated post-petition.

22. The replacement liens were granted the same validity, extent, and priority as those creditors held pre-petition.

23. The Debtor-in-Possession continued to operate prior to the Conversion Date, and continued to receive payments from its account debtors. Several of these payments were made in the form of checks.

---

[1] - The Defendants Idea 247, Inc., Libertas Funding LLC, and Samson MCA LLC.

24. On August 20, 2024, Debtors filed a Motion for Interim and Final Orders Authorizing Use of Cash Collateral (Lead Case Doc. 4) along with their Petition for relief under Chapter 13 of Title 11 of the United States Code.

25. This Court entered an Interim Order on August 22, 2024, granting Debtors' Motion (Lead Case Doc. 13) and authorizing Debtors to use Cash Collateral, retroactive to the Petition Date.

26. The Court entered Second and Third Interim Orders Authorizing Use of Cash Collateral on October 17, 2024, and December 17, 2024 (Lead Case Docs. 51 and 89), respectfully.

27. The Cash Collateral Orders provided that the lien creditors would be granted a replacement lien on all property acquired or generated post-petition by the Debtors, to the same extent and priority and of the same kind and nature as the creditors had prior to the Petition Date.

28. The Cash Collateral Orders did not expand or increase the lien creditors' original secured status, nor did they constitute a determination of the validity, extent, or priority of any party's lien.

29. The Cash Collateral Orders provided that the Debtors' authority to use Cash Collateral (and presumably the ongoing grant of replacement liens) would automatically and immediately terminate upon the case being converted to a Chapter 7 proceeding.

## FACTS

### The Huntington Bank UCC-1 Financing Statements

30. Based on the online records of the Kentucky Secretary of State, Huntington Bank filed two (2) UCC-1 financing statements with Office of the Kentucky Secretary of State in

November of 2018 naming Porchlight Louisville as the Debtor. *See* File Nos. 2018-2995220-40 and 2995219-18.

31. In May of 2023 Huntington Bank filed continuation statements for both of the Huntington Financing Statements.

32. In January of 2026 Huntington Bank filed a termination statement of the Financing Statement identified by File No. 2995219-18.

33. The unreleased Huntington Financing Statement lists a broad variety of business assets as collateral, including but not limited to chattel paper, accounts, general intangibles, rights to payments, deposit accounts, and money.

**<u>The Released Financial Statements</u>**

34. Based on the online records of the Kentucky Secretary of State, there are three other UCC-1 financing statements encumbering the Debtor's assets filed in 2023 and 2024, several years after the Huntington Financing Statements, and these were released in November 2025.

35. Based on the online records of the Kentucky Secretary of State, on or about August 23, 2023, Defendant IDEA Financial caused to be filed a UCC-1 financing statement identified by number 2023-3277364-79 (the "IDEA Financial Financing Statement"), naming Porchlight Louisville as debtor.

36. Based on the online records of the Kentucky Secretary of State, on or about November 19, 2025, Defendant IDEA Financial caused to be filed a termination statement relating to the Idea Financial Financing Statement.

37. Based on the online records of the Kentucky Secretary of State, on or about November 8, 2023, Lien Solutions filed a UCC-1 financing statement identified by number 2023-3287402-53 (the "November 2023 Financing Statement"), naming Porchlight Louisville as debtor.

38. Based on the online records of the Kentucky Secretary of State, on or about November 19, 2025, a termination statement relating to the November 2023 Financing Statement was filed.

39. Based on the online records of the Kentucky Secretary of State, on or about May 16, 2024, Lien Solutions filed a UCC-1 financing statement identified by number 2023-3287402-53 (the "May 2024 Financing Statement"), naming Porchlight Louisville as debtor.

40. Based on the online records of the Kentucky Secretary of State, on or about November 19, 2025, a termination statement relating to the May 2024 Financing Statement was filed.

41. Upon information and belief and based on the statements in the Debtor's cash collateral motion (Doc. 5), Defendant Idea Financial, Defendant Libertas, or Defendant Samson MCA (or some combination thereof) are the intended secured parties as to the Idea Financial Financing Statement, the November 2023 Financing Statement, and the May 2024 Financing Statement.

**<u>The Funds on Deposit with the Chapter 7 Trustee</u>**

42. Shortly after the January 17, 2025 Conversion Date, the Debtor's representative turned over four (4) checks to the Chapter 7 Trustee totaling[2] $78,832.26 (the "First Turnover Checks").

43. The First Turnover Checks are more particularly described as follows:

---

[2] The Debtor's representative originally turned over five (5) payments in the total amount of $120,774.59, but one of the payments (in the amount of $41,942.33) was returned NSF because of a "stop payment" order.

| **Payor** | **Payable to** | **Amount** | **Date** |
|---|---|---|---|
| Carrington Mtg Services | MacKenzie Shepard, Kayla Bell | $60,4016.78 | 12/20/24 |
| Auto-Owners Insurance | ServiceMaster Cleaning Restoration | $1,097.32 | 12/30/24 |
| ServiceMaster Clean | ServiceMaster Trifecta | $11,859.36 | 12/24/24 |
| ServiceMaster Clean | ServiceMaster Trifecta | $5,458.80 | 12/18/24 |

44. On or about April 7, 2025, another former representative of the Debtor turned over an additional four (4) checks to the Chapter 7 Trustee totaling $21,997.92 (the "Second Turnover Checks") (the First Turnover Checks and the Second Turnover Checks shall collectively be referred to as the "Turnover Funds").

45. The Second Turnover Checks are more particularly described as follows:

| Payor | Payable to | Amount | Check Date |
|---|---|---|---|
| Charissa & Gabrie Rieber | ServiceMaster | $7,776.98 | 1/21/25 |
| Interinsurance Exchange of the Automobile Club | ServiceMaster Trifecta | $7,800.00 | 1/10/25 |
| Viking Automatic Sprinkler Co. | ServiceMaster Cleaning | $891.60 | 1/2/25 |
| Progressive | Tyler Ervin and Brook Ervin and Servicemaster Restoration by Trifecta | $5,529.34 | 12/31/24 |

46. The various checks were either made payable to Debtor (under one of its assumed names),[3] or made payable to customers who then endorsed the back of the check and delivered the check to the Debtor.

[3] The Kentucky Secretary of State's Office lists the Debtor's assumed names as: "ServiceMaster Cleaning & Restoration by Porchlight," "ServiceMaster Cleaning & Restoration by PLH," "ServiceMaster Cleaning & Restoration by Trifecta," and "Servicemaster Trifecta."

47. Upon receipt, the Chapter 7 Trustee immediately deposited the Turnover Funds, for total[4] deposits of $100,830.18.

**<u>The Huntington Claims and the Trustee's Objection</u>**

48. On June 30, 2025, Defendant ServiceMaster filed a Proof of Claim in the amount of $349,098.72.[5]

49. On September 16, 2025, the Chapter 7 Trustee filed a limited objection to claims filed by Defendant Huntington to the extent that Defendant Huntington asserts a lien against the turnover funds.

50. On October 24, 2025, the Court entered an Order denying without prejudice the Chapter 7 Trustee's Limited Objection to Claims filed by Defendant Huntington.

**COUNT I- "Strong Arm" Lien Avoidance (11 USC 544)**
**<u>The Preconversion Checks are unencumbered cash collateral.</u>**

51. The Plaintiff hereby incorporates by reference the allegations set forth above as if fully set forth herein.

52. Under 11 U.S.C. §363(a), "[c]ash collateral means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest. . ."[6] Checks, as "unconditional promises or orders to pay a fixed amount of money" are "negotiable instruments."[7]

---

[4] Bank fees have a portion of the Turnover Funds since their deposit.
[5] At the time of the objection, there were three other UCC-1 financing statements creditors as described above, but these have been subsequently terminated.
[6] Pursuant to fn 2 of the First Interim Cash Collateral Order, this Court has stated that the term "cash collateral" is to have the same meaning as given in the Bankruptcy Code.
[7] Kentucky UCC § 3-104(1).

53. The Turnover Funds are part of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) and (7).

54. The Court, through its Three Interim Orders, authorized Debtors to use cash collateral existing in the bankruptcy estate through the Conversion Date.

55. The portion of the Turnover Funds traceable to the checks dated prior to the Conversion Date are Cash Collateral which Debtors were authorized to use pursuant to the Court's Three Interim Orders.

56. The only possible portion of the Turnover Funds potentially encumbered by the Defendants' alleged replacement liens, is the single check dated after the Conversion Date ($7,776.98 check dated January 21, 2025, drawn on the account in the name of Charissa & Gabrie Rieber).

57. Pursuant to the "strong arm" power of 11 U.S.C. §544(a)(1) and (2), the Plaintiff has the rights of a judicial lien creditor and execution creditor against property of the Estate, including but not limited to the Turnover Funds.

58. Any liens or other property interest asserted by the Defendants are avoidable pursuant to the "strong arm" powers of the Chapter 7 Trustee. 11 U.S.C. §544(a).

59. The Bankruptcy Estate is entitled to retain and use the Turnover Funds free and clear of the alleged liens of all Defendants herein.

**COUNT II- "Strong Arm" Lien Avoidance (11 USC 544)**
**<u>The Carrington Check is unencumbered cash collateral</u>**

60. The Plaintiff hereby incorporates by reference the allegations set forth above as if fully set forth herein.

61. A portion of the Turnover Funds in the amount of in the amount of $60,416.78 is traceable to a check (the "Carrington Check") dated December 20, 2024, payable to MacKenzie Shepherd, Kayla Bell ("Payees Shepherd and Bell"), drawn on an account in the name of Carrington Mortgage Services.

62. The Payees Shepherd and Bell indorsed the Carrington Check without restriction and delivered it to the Debtor. In turn, the Debtor indorsed the Carrington Check without restriction and turned it over to the Chapter 7 Trustee, who has deposited it.

63. The delivery by Payees Shepherd and Bell constitutes a "transfer" under Article 3 of the Uniform Commercial Code, which vested in the transferee Debtor "any right of the transferor to enforce the instrument[.]" KRS 355.3-203(1), (2).

64. Any Defendants' alleged lien against "accounts" cannot encumber Carrington Check because Article 9 of the Uniform Commercial Code excludes from its definition of "accounts" those "rights to payment evidenced by an instrument." KRS 355.9-102(1)(b)(3)(f).

65. The Defendants' alleged liens, if any, in the Carrington Check would be based on the inclusion of the term "instruments" in its UCC-1 financing statement and security agreement.

66. However, any alleged lien against "instruments" never attached or was perfected as against the Carrington Check because Payees Shepherd and Bell have not (to the knowledge of the Trustee") granted a lien in favor of Huntington Bank.

67. The portion of the Turnover Funds traceable to the Carrington Check are not "accounts" subject to any Defendants' alleged liens.

68. To the Extent the portion of the Turnover Funds traceable to the Carrington Check are proceeds of any Defendants' alleged liens against "accounts," the lien became unperfected 21 days after the date of the check.

69. KRS 355.9-315 provides that if a filed financing statement covers the original collateral (in this case "accounts"), the security interest becomes unperfected on the twenty-first day after the security interest attaches (unless certain inapplicable exceptions apply).

70. Finally, any Defendants' alleged replacement liens created under the Cash Collateral Order cannot encumber the portion of the Turnover Funds traceable to the Carrington Check.

71. The replacement liens did not expand any Defendants' lien rights, but merely affixed a lien to property acquired in the future, with the same priority and scope as the bank's pre-petition liens.

72. The Defendants' alleged liens did not encumber the proceeds of the Carrington Check because (i) it was made payable to a non-debtor, and (ii) the Payees Shepherd and Bell never granted a lien on the Carrington Check.

73. The replacement liens did not create any new liens, so even in the Carrington Check constituted proceeds of an "account" (which it does not), after perfection lapsed under KRS 355.9-315, no replacement lien affixed.

74. Pursuant to the "strong arm" power of 11 U.S.C. §544(a)(1) and (2), the Plaintiff has the rights of a judicial lien creditor and execution creditor against property of the Estate, including but not limited to the Turnover Funds.

75. Any liens or other property interest asserted by the Defendants in that portion of the Turnover Funds attributable to the Carrington Check are avoidable pursuant to the "strong arm" powers of the Chapter 7 Trustee. 11 U.S.C. §544(a).

76. The Bankruptcy Estate is entitled to retain and use that portion of the Turnover Funds attributable to the Carrington Check free and clear of the alleged liens of all Defendants herein.

**COUNT III- "Strong Arm" Lien Avoidance (11 USC 544; KRS 355.9-310)**
**Alleged Liens in favor of Defendants without**
**filed financing statements are unperfected and avoidable.**

77. The Plaintiff hereby incorporates by reference the allegations set forth above as if fully set forth herein.

78. Defendant ServiceMaster has not filed a UCC-1 financing statement to perfect its alleged lien, if any, against the Debtor's assets.

79. Because Defendant ServiceMaster did not file a UCC-1 financing statement, pursuant to 355.9-310, Defendant ServiceMaster's alleged lien, if any, is unperfected.

80. To the extend Defendant ServiceMaster claims a property interest in the Turnover Funds, the basis of such alleged property interest is not included with its proof of claim.

81. Pursuant to the "strong arm" power of 11 U.S.C. §544(a)(1) and (2), the Plaintiff has the rights of a judicial lien creditor and execution creditor against property of the Estate, including but not limited to the Turnover Funds.

82. Any liens or other property interest asserted by the Defendant ServiceMaster in the Turnover Funds are avoidable pursuant to the "strong arm" powers of the Chapter 7 Trustee. 11 U.S.C. §544(a).

83. The Bankruptcy Estate is entitled to retain and use the Turnover Funds free and clear of the alleged liens of Defendant ServiceMaster.

**COUNT IV- "Strong Arm" Lien Avoidance (11 USC 544; KRS 355.9-513)**
**Alleged Liens in favor of Defendants with**
**<u>terminated financing statements are unperfected and avoidable.</u>**

84. The Plaintiff hereby incorporates by reference the allegations set forth above as if fully set forth herein.

85. The Idea Financial Financing Statement, the November 2023 Financing Statement, and the May 2024 Financing Statement have all been released by the filing of termination statements with the Office of the Kentucky Secretary of State.

86. Upon the filing of the Termination Statements, pursuant to KRS 355.9-513(4), the Idea Financial Financing Statement, the November 2023 Financing Statement, and the May 2024 Financing Statement ceased to be effective.

87. To the extent that Defendant Idea Financial, Defendant Libertas, and Defendant Samson MCA assert a secured claim against the Turnover Funds, such claims are unperfected.

88. Pursuant to the "strong arm" power of 11 U.S.C. §544(a)(1) and (2), the Plaintiff has the rights of a judicial lien creditor and execution creditor against property of the Estate, including but not limited to the Turnover Funds.

89. Any liens or other property interest asserted by the Defendant Idea Financial, Defendant Libertas, and Defendant Samson MCA in the Turnover Funds are avoidable pursuant to the "strong arm" powers of the Chapter 7 Trustee. 11 U.S.C. §544(a).

90. The Bankruptcy Estate is entitled to retain and use the Turnover Funds free and clear of the alleged liens of Defendant Idea Financial, Defendant Libertas, and Defendant Samson MCA.

**COUNT V – Claim Objection**

91. Plaintiff incorporates by reference the allegations in the prior numbered paragraphs as if fully set forth herein.

92. Since the Defendant's alleged security interests purportedly encumbering said Turnover Funds are unperfected and avoidable, the Defendants do not have an allowed claim secured by the Turnover Funds.

93. At most, Defendants are unsecured creditors as against the Bankruptcy Estate's interest in the Turnover Funds.

94. Pursuant to Section 550 of the Bankruptcy Code, the Trustee may recover the value of any alleged security interest in favor of Defendants that the Trustee has avoided.

95. Pursuant to Section 551 of the Bankruptcy Code, the avoided security interest is preserved for the benefit of the Bankruptcy Estate.

WHEREFORE, the Trustee requests judgment as follows:

1. Entry of Judgment declaring that the Turnover Funds are property of the Estate.

2. Entry of Judgment declaring the priority of the Defendants' liens or other property interests against the turnover funds is inferior to the Trustee, pursuant to Section 544(a).

3. Entry of Judgment declaring that the Defendants' liens or other property interests, if any, is voidable under Section 544(a) of the Bankruptcy Code, and declaring that, at most, the Defendants are unsecured creditors as to the Turnover Funds.

4. Entry of Judgment requiring the Defendants to pay the Trustee his costs, expenses, and reasonable attorneys' fees incurred in pursuing this action to the extent authorized by law or permitted by the Court.

5. For such other relief as this Court deems just, proper, necessary, or appropriate.

Dated this the 17th day of August, 2026.

Respectfully submitted,

*/s/ Stephen Barnes*

Stephen Barnes
KY Bar Id No. 89762
Walther, Gay & Mack, PLC
163 East Main Street, Suite 200
P.O. Box 1598
Lexington, KY 40588-1598
Telephone (859) 225-4714
Facsimile (859) 225-1493
sbarnes@wgmfirm.com
www.wgmfirm.com
COUNSEL FOR TRUSTEE